**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EARNEST CASSELL WOODS, II, *Plaintiff-Appellee*, | No. 09-16113 |
| v. | D.C. No. 2:04-cv-01225-LKK-GGH |
| TOM L. CAREY, Warden; T. DICKENSON, *Defendants*, | OPINION |
| and | |
| SANTOS CERVANTES, *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior District Judge, Presiding

Argued and Submitted
April 18, 2012—San Francisco, California

Filed July 17, 2013

Before: Stephen Reinhardt, John T. Noonan,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Murguia

## SUMMARY[*]

### Prisoner Civil Rights/Attorney's Fees

Granting a prisoner's motion for attorney's fees on appeal, the panel held that the 150 percent cap on attorney's fees set forth in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(d)(2), does not apply to fees incurred on appeal by a prisoner who successfully defends the verdict that he obtained in the district court.

Judge Murguia dissented, stating that the majority decision runs counter to the plain meaning of 42 U.S.C. § 1997e(d)'s text, and that the opinion has created a circuit split. *See Riley v. Kurtz*, 361 F.3d 906, 916–18 (6th Cir. 2004) (holding § 1997e(d)(2)'s 150% cap includes any attorney's fees a prisoner incurs defending a monetary judgment on appeal).

## COUNSEL

Jeffrey T. Renz, Montana Defender Project, University of Montana School of Law, Missoula, Montana, for Plaintiff-Appellee.

Jennifer Marquez, Longyear, O'Dea & Lavra, LLP, Sacramento, California, for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

REINHARDT, Circuit Judge:

In civil rights cases, our normal rule provides for an award of appellate attorney's fees to a prevailing party who successfully defends a verdict won in the district court. *Hutto v. Finney*, 437 U.S. 678, 693–98 (1978); *Corder v. Gates*, 104 F.3d 247, 249 (9th Cir. 1996). The plaintiff-appellee in this case, Earnest Cassell Woods II, qualifies as a prevailing party who would ordinarily be entitled to an award of attorney's fees from a defendant who unsuccessfully appealed such a verdict. Because Woods is a prisoner, however, his award is subject to any applicable limiting provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d).

The defendant-appellant, Santos Cervantes, argues that Woods' request for attorney's fees is limited by § 1997e(d)(2) (hereinafter "§ (d)(2)") of the PLRA. This provision imposes a cap on the amount of attorney's fees that a prisoner can recover from defendant prison officials in certain circumstances. The cap is 150 percent of the monetary judgment. The cap applies to attorney's fees incurred in conjunction with obtaining the award of a monetary judgment. We have held that it does not apply to attorney's fees incurred in obtaining injunctive (or other non-monetary) relief. *Dannenberg v. Valadez*, 338 F.3d 1070, 1074–75 (9th Cir. 2003). In *Dannenberg*, we held that the fee cap applied only to "the portion of total fees that was incurred solely in order to obtain money damages." *Id.* at 1074. Here, we follow *Dannenberg* and hold that the cap in § (d)(2) does not apply to fees incurred on appeal by a prisoner who successfully defends the verdict that he obtained in the

district court. In other words, the § (d)(2) cap applies only to fees incurred in securing the judgment in the district court and not to fees incurred in defending the judgment on appeal.

## BACKGROUND

Recently, we affirmed a jury verdict awarding Woods $1,500 in compensatory and punitive damages against Cervantes, an Appeals Coordinator at the California State Prison, Solano. The jury had found that Cervantes violated Woods' Eighth Amendment right to be free from cruel and unusual punishment by repeatedly screening out Woods' medical grievances, causing him to undergo pain and suffering for more than a year as the result of his inability to obtain dental care necessary to fix his broken partial dentures. Cervantes appealed, arguing that the district court had erred in denying him qualified immunity. Cervantes also asked this Court to set aside the $1,000 punitive damages award because it was "unsupported by a showing of evil motive or intent." We rejected both of Cervantes' arguments and affirmed the judgment in a memorandum disposition. *Woods v. Carey*, 488 F. App'x 194, 196 (9th Cir. 2012).

Because Woods was pro se before the district court, no attorney's fees were sought in connection with the award of judgment. On appeal, Woods was represented by counsel. After we rejected Cervantes' challenge to the verdict, Woods filed a timely motion for attorney's fees on appeal under 42 U.S.C. § 1988(b). He requested $16,800 in attorney's fees and $521.09 in costs.[1] Section 1988(b) provides that, "[i]n

---

[1] Costs are also in dispute. Cervantes argues that Woods cannot recover costs because he failed to file a bill of costs in compliance with Ninth Circuit Rule 39 and 28 U.S.C. § 1920. Woods, however, is not requesting

any action or proceeding to enforce a provision of section[] [1983] . . . the court, in its discretion, may allow the prevailing party [] a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Cervantes concedes that Woods qualifies as a prevailing party. Cervantes argues, however, that he need pay only $2,250 (150 percent of the judgment) of Woods' attorney's fees because the PLRA fee cap provision applies to fees incurred defending a monetary judgment on appeal.[2] § 1997e(d)(2).

The PLRA attorney's fees provisions provide, in relevant part:

(d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional

---

taxable costs under § 1920 and therefore did not need to file a bill of costs. He requests fees and expenses under 42 U.S.C. § 1988, which allows for recovery of reasonable out-of-pocket expenses that "would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)). Expenses normally charged to fee-paying clients include "photocopying, paralegal expenses, and travel and telephone costs." *Thornberry v. Delta Air Lines Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982). Accordingly, Woods can recover any such funds he may have reasonably expended. We refer this matter to the Appellate Commissioner to calculate the amount of costs that should be awarded.

[2] Cervantes argues that a lodestar analysis is unnecessary because the award is capped so low. However, he requests that the panel allow him to file supplemental briefing on the lodestar analysis in the event it decides that the fee cap does not apply. Because we decide only the legal question and refer the calculation of the appropriate award of attorney's fees to the Appellate Commissioner, Cervantes may brief the lodestar analysis question before the Commissioner. *See* Ninth Circuit Rule 27-7.

facility, in which attorney's fees are authorized [], such fees shall not be awarded, except to the extent that–

> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

> (B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

>> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(1)–(2).

Although our prior decision in *Dannenberg v. Valadez*, explained that § (d)(2) was limited to those fees "incurred for the sole purpose of securing the monetary judgment," 338 F.3d 1070, 1075 (9th Cir. 2003), we have not previously decided whether attorney's fees on appeal incurred in order

to preserve a district court's award of damages against a prison official are subject to the 150 percent statutory cap.

## DISCUSSION

## I.

Woods and Cervantes dispute whether § (d)(2) limits the amount that Woods may recover from the defendant for attorney's fees incurred in defending his judgment on appeal to 150 percent of the monetary relief awarded to him at trial.[3] We begin our analysis as one of statutory interpretation. Even so, because this is not the first time our court has been asked to determine the scope of § (d)(2), our analysis must also take into account our prior decision in *Dannenberg*.

If "the statutory language provide[d] a clear answer," our task would come to an end. *United States v. Harrell*, 637 F.3d 1008, 1010 (9th Cir. 2011) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). "If the statute's terms are ambiguous, [however,] we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). "A statute is ambiguous if it 'gives rise to more than one reasonable interpretation.'" *DeGeorge v. U.S. Dist. Ct. for Cent. Dist. of*

---

[3] Woods argues in the alternative that if the PLRA does limit the amount of attorney's fees that can be assessed against Cervantes in this case, it violates the Equal Protection Clause because there is no rational basis that justifies preventing prisoner-appellees, like Woods, from obtaining full appellate attorney's fees. We do not reach the constitutional argument because we hold that § (d)(2) does not apply to Woods' appellate attorney's fees as a matter of statutory interpretation.

*Cal.*, 219 F.3d 930, 939 (9th Cir. 2000) (quoting *A–Z Int'l v. Phillips*, 179 F.3d 1187, 1192 (9th Cir. 1999)).

The language used in § (d)(2) is ambiguous with respect to the circumstances under which the fee cap is applicable. The section states: "Whenever a monetary judgment is awarded in an action [the fee cap shall be applicable]." This section could be interpreted to mean either (1) the fee cap applies to attorney's fees awarded only in conjunction with the obtaining of a monetary judgment—an award that occurs only once in the course of an action, following summary judgment or trial before the district court, or (2) the fee cap applies to any attorney's fees that are awarded for any reason during the course of an action in which a monetary judgment has been awarded by the district court.[4] Woods urges the former construction of the statute; Cervantes, the latter. Both are "reasonable interpretation[s]" of the statutory language. *DeGeorge*, 219 F.3d at 939 (citations omitted).

## II.

In *Dannenberg v. Valadez*, we rejected the defendant's interpretations of § (d)(2)—that is, we rejected the application of the fee cap to fees awarded for any reason during the course of an action in which a monetary judgment has been awarded. 338 F.3d 1070 (9th Cir. 2003). Instead, we limited

---

[4] The dissent would adopt this latter interpretation with one adjustment—the addition of the word *only* following "in which." This addition is apparently necessary to make the dissent's construction of § (d)(2) consistent with *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003), discussed below. Nothing in the statute, however, supports the limitation that the dissent urges—to cases in which *only* monetary relief is awarded in the district court. Nor does anything in *Dannenberg* support such an interpretation.

the applicability of the fee cap to those fees awarded only in conjunction with the obtaining of a monetary judgment. *Id.* at 1074–75. We held that the fee cap does not apply to attorney's fees incurred in securing non-monetary relief when a prisoner is awarded both a monetary judgment and a declaratory judgment or an injunction in the same proceeding. *Id.*

In so holding, we looked to the whole of § 1997e(d) and construed § (d)(2) in a manner that would be consistent with § (d)(1). *Id.* at 1074 (citing *United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999) ("statutes are to be interpreted as a whole" and "[o]ne provision of a statute should not be interpreted in a manner that renders other sections of the same statute 'inconsistent, meaningless or superfluous.'") (citation omitted)). We reasoned that in a case in which the court ordered both monetary and non-monetary relief, it would be inconsistent with § (d)(1), which provides for an amount of attorney's fees "proportionately related to the court-ordered relief," to essentially ignore the attorney's efforts in pursuing the non-monetary relief by limiting the fee award to 150% of the monetary judgment. *Dannenberg*, 338 F.3d at 1074. Thus, we held that the fee cap applied only to those fees "incurred for the sole purpose of securing the monetary judgment." *Id.* at 1075.

Our conclusion in *Dannenberg*, that § (d)(2) applies only to those fees "incurred for the sole purpose of securing the monetary judgment," is the proper interpretation of that provision and one we must follow here. Just as *Dannenberg* held that it would be inconsistent with § (d)(1) to apply the fee cap to attorney's fees incurred for securing non-monetary relief, it would likewise be inconsistent with § (d)(1) to apply the fee cap to attorney's fees that are awarded, not in

connection with securing the monetary judgment, but for services performed in the court of appeals to defeat the defendant's attempt to overturn the district court's verdict.

Not only does this interpretation follow from *Dannenberg*, but it is also the more logical of the two proposed readings of the statutory text. Throughout the course of an action, courts may award fees on multiple occasions, but only the district court awards "a monetary judgment" and then only on one occasion—either after summary judgment or after a verdict in the prisoner's favor. § 1997e(d)(2). Furthermore, the statute uses the present tense—"[w]henever a monetary judgment *is* awarded"— meaning the point in the course of an action at which the monetary judgment is awarded, rather than in any case in which a monetary judgment *has been* awarded. *Id.* Thus, § (d)(2), applies to the limited circumstance of attorney's fees awarded in conjunction with securing "a monetary judgment," not to fees for services performed in the court of appeals.

## III.

The holding we reach here furthers the purposes of the PLRA as intended by Congress. First, it ensures that prisoners who have prevailed on a constitutional claim before the district court will not lose the relief that they have been awarded because they cannot secure counsel on appeal. Congress enacted the PLRA to deter frivolous prisoner lawsuits that needlessly wasted judicial resources and to provide for their dismissal at an early stage. *Madrid v. Gomez*, 190 F.3d 990, 996 (9th Cir. 1999); 141 Cong. Rec. S14413 (daily ed. Sept. 27, 1995). It did so in part by seeking to limit the number of prisoner claims that are filed. "A

substantial portion of the judiciary's costs related to these types of cases is incurred in the initial filing and review stage prior to any dismissal." Judicial Impact Office, Violent Criminal Incarceration Act of 1995, H.R. 667 (1995). Congress, therefore, sought to have frivolous prisoner actions dismissed "at an earlier part in the process" and enacted disincentives to litigating frivolous claims, such as filing fees and caps on attorney's fees, that would "affect a prisoner's decision to file the action" in the first place. *Id.*

Congress did not, however, intend to discourage the collection of awards in those comparatively few meritorious cases in which the district court had found that the prisoner's constitutional rights had been violated and that the prisoner was entitled to collect damages for that violation.[5] The majority of these actions result in low-damage awards for the prisoner,[6] but can affect substantial change in the prison conditions or prisoner treatment. If a prison official appeals a verdict in the prisoner's favor, the prisoner must be able to defend the appeal in order to collect the damages he was

---

[5] The category of cases to which our holding applies is an extremely small percentage of the total number of prisoner suits filed. For example, out of the 55,376 prisoner suits that ended in 2000, only 10.5% went to trial, and of those, a total of 77 resulted in victories for the prisoner. Margo Schlanger, *Inmate Litigation*, 116 HARV. L. REV. 1555, 1706 n.158 (2003). That is a success rate of 0.1% of the total number of suits filed and a victory rate of 13% for those prisoner suits ending in trial. *See id.*

[6] "[T]he mean damages for cases won at trial by inmate civil rights plaintiffs was $18,800, and the median was a mere $1000." Schlanger, *supra* note 4, at 1603. The cause of such low damage awards is not that the constitutional violations suffered are not egregious, but rather explained by traditional tort principles because prisoners are incarcerated they have "no (or very low) lost wages and no medical expenses." *Id.* at 1622.

awarded and to help remedy the unconstitutional practices. Unlike the filing of new cases, the appeal is not initiated by the prisoner. The appeal is brought by the prison official and the prisoner finds himself in the position of being required to defend the verdict to which the district court found that he was entitled. Although a huge volume of prisoner cases is filed, a volume that Congress sought to diminish, prisoners obtain an award of monetary damages in relatively few cases. Thus, the number of prison official appeals is small. While Congress meant to discourage the filing of § 1983 claims by prisoners because there were so many unmeritorious cases, it did not seek to compel those comparatively few prisoners with meritorious claims to forfeit their monetary awards by rendering the prisoners unable to secure counsel to defend the judgment to which the district court found them to be entitled.

The second way in which our holding furthers the purpose of the PLRA is that it promotes judicial economy. The availability of attorney's fees on appeal will save judicial resources by discouraging defendants from frivolously appealing judgments in prisoners' cases. If we were to hold to the contrary, defendants would always have an incentive to appeal monetary judgments in the prisoners' favor—no matter how small—because they would not stand to lose anything except the time of staff attorneys who are employed by the state for the purpose of handling lawsuits against them.[7] That is, if we were to hold that the fee cap applies to appellate fees, defendants facing the choice of whether to

---

[7] As we noted in our earlier published opinion in this case, the defendants in prisoner litigation "are ordinarily institutional officials or employees, and are represented by the Attorney General or other counsel regularly retained by the governmental entitles involved." *Woods v. Carey*, 684 F.3d 934, 940 n.6 (9th Cir. 2012).

appeal would not risk having to pay prisoners' attorney's fees, and, therefore, would be more inclined to take an appeal, no matter how small the prisoner's monetary damage award below.   Such unnecessary appeals needlessly burden the judicial system—the exact opposite of Congress' goal in enacting the PLRA.[8]

---

[8] The dissent points out that our conclusion conflicts with the outcome reached by the Sixth Circuit.   The dissent fails to acknowledge, however, that the Sixth Circuit was not bound to follow our earlier decision in *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003).

More important, although a circuit split is not desirable, we are not required to follow the initial circuit to decide an issue if our own careful analysis of the legal question leads us to conclude that Congress intended the contrary result.  *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999).  When there is a "compelling reason to do so" we do not hesitate to create a circuit split, even when several circuits have addressed the question and all reached a result contrary to our own. *Leavitt v. Arave*, 383 F.3d 809, 825 (9th Cir. 2004) (disagreeing with six circuits to create a circuit split); *see also In re Penrod*, 611 F.3d 1158, 1160–61 (9th Cir. 2010) (disagreeing with eight circuits to create a circuit split).

Moreover, this opinion decides a question of attorney's fees.  A circuit split regarding attorney's fees does not generate uncertainty in an area that governs individual or corporate behavior.  *See Hill v. C.I.R.*, 204 F.3d 1214, 1217-18 (9th Cir. 2000) (explaining that "[u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system") (citations omitted); *Portland 76 Auto/Truck Plaza, Inc. v. Union Oil Co. of California*, 153 F.3d 938, 943 (9th Cir. 1998) (noting the "importance of predictability to commercial relations" in influencing the decision to not create a circuit split).  No one will suffer any injustice as a result of our opinion, except, perhaps prisoners and their attorneys in the Sixth Circuit, should our analysis fail to persuade that Circuit to change its views.

**CONCLUSION**

We hold that the fee cap in § (d)(2) does not apply to attorney's fees earned in conjunction with an appeal in which prison officials seek unsuccessfully to reverse a verdict obtained by the prisoner before the district court. We grant Woods' motion for attorney's fees on appeal and refer this matter to the Appellate Commissioner to determine the amount of such fees, as well as the amount of reimbursable costs.

**Motion GRANTED.**

---

MURGUIA, Circuit Judge, dissenting:

Because it runs counter to the plain meaning of 42 U.S.C. § 1997e(d)'s text, I respectfully dissent from the majority's circuit-splitting opinion. *See Riley v. Kurtz*, 361 F.3d 906, 916–18 (6th Cir. 2004) (holding § 1997e(d)(2)'s 150% cap includes any attorney fees a prisoner incurs defending a monetary judgment on appeal).

**I.** I begin with § 1997(d)'s text, and give its terms their ordinary meaning. *Synagogue v. United States*, 482 F.3d 1058, 1061–62 (9th Cir. 2007).

Section 1997e(d)(1) provides that in "any action brought by a prisoner . . . in which attorney's fees are authorized," attorney fees "shall not" be awarded to a prevailing prisoner unless:

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute . . . and

(B)

(i) the amount of the fee is proportionately related to the court ordered relief for the violation . . .

The word "action" includes both a trial and the subsequent appeal. *See Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994) ("An appeal is not a 'supplementary proceeding.' *It is a continuance of the same action*.") (emphasis added); *see also*, *e.g.*, *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1706 (2012) ("In 2005, petitioners filed *this* action against respondents . . . .") (emphasis added); *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 970 (9th Cir. 2012) ("Plaintiff . . . filed *this* action under the Employee Retirement Income Security Act . . . .") (emphasis added). Consequently, the limitations in paragraph (d)(1) apply to the attorney fees Woods incurred at trial and on appeal (*i.e.*, in this "action"), *Riley*, 361 F.3d at 914, and Woods "shall not" recover any attorney fees unless they are "proportionately related to the court ordered relief" in this action: $1,500.

Paragraph (d)(2) then defines exactly what constitutes a "proportionately related" attorney-fee award where a prisoner obtains nothing but monetary relief in an action. Specifically, it provides that "in any action described in paragraph [d](1)" where the relief ordered for the violation of the prisoner's civil rights is monetary, a prisoner's attorney-fee award may not exceed 150% of that monetary relief. *See also*

*Dannenberg v. Valadez*, 338 F.3d 1070, 1074–75 (9th Cir. 2003).

A straightforward application of the statute's text requires a rejection of Woods's argument that (d)(2)'s 150% cap does not include the fees he incurred defending his monetary judgment on appeal. *See Wilson v. C.I.R.*, 705 F.3d 980, 988 (9th Cir. 2013) ("If the plain meaning of the statute is unambiguous, that meaning controls."). Woods, a prisoner, "brought" this "action" where an attorney-fee award is authorized, so his action is "described" in paragraph (d)(1); and because the only relief Woods obtained was monetary, paragraph (d)(2)'s 150% cap applies to the attorney fees he incurred at trial and on the subsequent appeal (*i.e.*, in this "action").[1] Accordingly, Woods may not recover more than $2,250 in attorney fees: 150% of the relief he obtained in this action.[2]

The majority injects ambiguity into the statute to avoid this outcome by reading paragraph (d)(2) in isolation from paragraph (d)(1), *Maj. Op.*, at 8, a methodology it rightly impugns several pages later, *Maj. Op.*, at 9. But when the statute is read in its entirety, the answer to the question here is clear. Woods's attorney-fee award must satisfy paragraph

---

[1] Woods's argument that this application of the statute violates the Equal Protection Clause fails, as he cannot "negate every conceivable basis which might support the legislation." *See Riley*, 361 F.3d at 916–18 (explaining the rational bases for including appellate attorney fees within (d)(2)'s 150% cap).

[2] Of this $2,250 award, the statute requires that 25% be satisfied from the monetary relief Woods obtained in his action. *See* 42 U.S.C. § 1997e(d)(2).

(d)(1)(B)(i)'s[3] requirement of being "proportionately related to [his] court ordered relief," because that requirement applies in "any action brought by a prisoner." And, as even the majority must concede, had Cervantes not appealed, Woods's attorney-fee award would be capped, per paragraph (d)(2), at $2,250, because that is 150% of the monetary judgment (*i.e.*, the "relief" obtained in this "action"). It follows, then, that Congress has explicitly defined paragraph (d)(1)'s proportionality requirement to be 150% of the monetary judgment when the sole "relief" obtained in an "action" (*i.e.*, a trial and subsequent appeal) is monetary.

Indeed, it is the majority's opinion that is ambiguous. As noted, had Cervantes not appealed, the majority must concede that Woods's attorney-award would be capped at $2,250, the figure that satisfies the requirements of both paragraph (d)(1) and (d)(2). But the majority holds that Woods's attorney-fee award is no longer capped at $2,250 because Cervantes appealed, even though the relief Woods obtained in this action did not change. The outcome of the majority's curious reading of § 1997e(d) is that a $2,250 attorney-fee award was proportionately related to $1,500 before Cervantes appealed, but $2,250 stopped being proportionately related to $1,500 when Cervantes did appeal. In other words, the majority reads paragraph (d)(1)'s proportionality requirement to mean two different things depending on whether a losing defendant

---

[3] Paragraph (d)(1)(B)(ii), which permits a prisoner to recover attorney fees "incurred enforcing the relief" obtained in the action, covers efforts a prisoner's attorney must make to compel a non-compliant party to adhere to the relief ordered in the action. *See, e.g.*, *Balla v. Idaho*, 677 F.3d 910, 918–21 (9th Cir. 2012) (post-judgment monitoring of losing party's compliance with an injunction) (citing, inter alia, *Webb v. Ada Cnty.*, 285 F.3d 829 (9th Cir. 2002)). Accordingly, it is inapplicable in Woods's case.

appeals an adverse judgment. *Cf. Dannenberg*, 338 F.3d at 1074 (interpreting § 1997e(d) in way that was "internally consistent").

**II.** The majority engages in a paragraph of statutory analysis, but that also is unpersuasive. *Maj. Op.*, at 10.

The majority proposes that paragraph (d)(2) applies only to trial-level work, not work done on appeal, because (d)(2) is written in the present tense and, had Congress intended (d)(2) to cap attorney fees incurred on appeal, it would have used the past tense. But the majority ignores that (d)(2) applies to "an action described in paragraph[d](1)"; that paragraph (d)(1) describes "any" action brought by a prisoner; and that the word "action" includes a trial and subsequent appeal. Congress did not need to use the past tense to signal that (d)(2) applies to fees incurred on appeal: it sent that message by stating (d)(2) applies to the entire action brought by a prisoner.

The majority also contends that paragraph (d)(2) does not cap appellate fees because (d)(2) only applies to awards connected to securing a "monetary judgment," which is only awarded in the district court, whereas "courts may award fees on multiple occasions." But this argument ignores paragraph (d)(1)(B)(i)'s limitation that an attorney-fee award is available in an "action" governed by the PLRA only to the extent it is proportionately related to the relief ordered "for the violation" of the prisoner's civil rights. Here, "the violation" is of Woods's rights under the Eighth Amendment, and the court-ordered relief for that violation in this action is $1,500. Woods's attorney-fee award must be proportionately related to *that* relief.

**III.**      Recognizing that the statute does not support its result, the majority notes that it must "take into account" *Dannenberg v. Valadez*, 338 F.3d 1070 (9th Cir. 2003). *Maj. Op.*, at 7.  It is of course true that we must follow the holdings of prior panels, *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc), but *Dannenberg* is not remotely dispositive here.

As the majority explains, Dannenberg obtained injunctive relief *in addition to* $9,000 in monetary relief, and also a $57,556.25 attorney-fee award.  *Dannenberg*, 338 F.3d at 1071.  The defendants argued that Dannenberg's attorney-fee award ran afoul of paragraph (d)(2) by exceeding 150% of the *monetary* relief Dannenberg obtained in his action.  *Id.* at 1073.  This court rejected that argument, as it disregarded paragraph (d)(1)'s proportionality requirement: the only way to award Dannenberg attorney fees proportionately related to his court-ordered relief was to account for both his injunctive and monetary relief.

It was in this context that the court wrote that "(d)(2) caps attorneys' fees incurred for the sole purpose of securing the monetary judgment," *id.* at 1075, and it is obvious this language merely meant to distinguish Dannenberg's action from one like Woods's, in which the "sole" relief obtained is monetary.  This "sole purpose" language says nothing about attorney fees incurred defending a monetary judgment on appeal, because *Dannenberg* had no occasion to address that issue.  *Cf. Maj. Op.*, at 9–10.  The majority's reliance on this half-sentence in *Dannenberg*, torn from context, to evade the statute's clear meaning is as unconvincing as its reading of paragraph (d)(2) in isolation from paragraph (d)(1).

To the extent *Dannenberg* is relevant here, it supports capping Woods's attorney fee-award at $2,250: the attorney-fee award that is proportionately related to the $1,500 in relief Woods obtained in this action. *Dannenberg* hinged on the proposition that a prevailing prisoner's attorney-fee award must satisfy paragraph (d)(1)'s proportionality requirement, and as explained above, the majority discards (d)(1)'s proportionality requirement when a defendant appeals an adverse judgment. So while purporting to rely on *Dannenberg*, the majority is unfaithful to *Dannenberg*'s reasoning.[4]

**\* \* \***

A court is not free "to revise the plain language of the statute simply because [it] think[s] that an alternative construction is more sensible." *United States v. Jensen*, 705 F.3d 976, 980 (9th Cir. 2013) (internal quotation marks omitted). The majority has created a circuit split by awarding attorney fees the statute says "shall not" be awarded. I respectfully dissent.

---

[4] The majority's suggestion that the Sixth Circuit might have decided *Riley*, 361 F.3d at 916–18, differently had it needed to account for *Dannenberg* is demonstrably false. *See Maj. Op.*, at 13 n.8. Before *Riley*, the Sixth Circuit held in *Walker v. Bain*, 257 F.3d 660, 667 n.2 (6th Cir. 2001), that paragraph (d)(2)'s cap does not apply when a prisoner obtains more than just monetary relief in an action—precisely the holding in *Dannenberg*.