NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SCOTT WARREN COHEN,<br>　　　　　　　Debtor. | BAP No. CC-23-1057-CFL<br><br>Bk. No. 8:21-bk-12176-SC |
| SCOTT WARREN COHEN,<br>　　　　　　　Appellant,<br>v.<br>CARLA COHEN,<br>　　　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Scott C. Clarkson, Bankruptcy Judge, Presiding

Before: CORBIT, FARIS, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Scott Warren Cohen ("Scott")[2] appeals the

bankruptcy court's order granting relief from the automatic stay to his

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "Cal. Fam. Code" references are to the California Family Code.

[2] We will refer to the parties by their first names for clarity because they share the

former spouse, Carla F. Cohen ("Carla"). The bankruptcy court granted Carla relief from stay to return to state family court to litigate her family law claims as part of their interrupted dissolution proceedings. Because we find no error, we AFFIRM.

## FACTS[3]

Scott and Carla were finalizing a marital dissolution proceeding (initiated in February 2020) in California family court ("Family Law Proceedings") when Scott filed his chapter 7 bankruptcy petition. Consequently, the Family Law Proceedings were stayed.

Because distribution of the marital property had yet to occur, Carla sought an extension of time to file a proof of claim in Scott's bankruptcy. The bankruptcy court subsequently approved a stipulation between the trustee and Carla which stated that: (1) Carla's claims against Scott were "not liquidated at this time"; (2) the trustee preferred that Carla liquidate the claims outside the bankruptcy court; and (3) Carla should be given additional time to liquidate the value of her claims. Carla subsequently filed a proof of claim in an "unknown" amount.

---

same last name. No disrespect is intended.

[3] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Carla also filed a motion for relief from the automatic stay for the purpose of continuing and concluding the Family Law Proceedings and liquidating her claims against Scott.

In her supporting declaration, Carla indicated that as part of the Family Law Proceedings, she intended to utilize a forensic accountant to assist with uncovering funds Scott potentially concealed or secretly dissipated. Carla sought confirmation from the bankruptcy court that nothing prohibited the state court from entering orders for child support, spousal support, attorney's fees, and/or sanctions against Scott for breaches of fiduciary duty, concealing income, frustrating a settlement, etc.

Scott opposed Carla's request for relief from the automatic stay. Scott argued that he did not have the funds to defend himself in the Family Law Proceedings at the same time he was defending himself against § 523 nondischargeability actions initiated by former clients arising from his alleged involvement in a Ponzi scheme. Scott also argued that Carla's statements regarding her intent to pursue alleged concealed assets indicated that she planned to use the Family Law Proceedings as a way to revive time-barred nondischargeability actions for § 523(a)(2) (fraud), § 523(a)(4) (embezzlement), and/or § 523(a)(6) (malice/conversion) (together referred to as "Time-Limited Claims").

The bankruptcy court entered an order granting in part Carla's motion ("Stay Relief Order"). The bankruptcy court granted Carla relief from stay to proceed in the Family Law Proceedings "to liquidate her

claims for child support, spousal support, and equalization payments, i.e., claims which fall under either . . . [§] 523(a)(5) or [§] 523(a)(15)." But, the bankruptcy court noted that it was not granting Carla relief from stay to "pursue tort claims beyond the scope of Sections 523(a)(5) or 523(a)(15)" because "the time for filing nondischargeability for tort-related claims under [§§] 523(a)(2), 523(a)(4) and 523(a)(6) has expired." Neither Scott nor Carla appealed the Stay Relief Order.

When the parties returned to state court to resume the Family Law Proceedings, the scope and meaning of the Stay Relief Order became a point of contention. Because the family law court was mindful of the bankruptcy stay, and the parties disagreed as to the breadth of what could be litigated in the Family Law Proceedings, the family law court requested that the parties obtain clarification from the bankruptcy court as to the scope of permissible litigation.

Consequently, Carla returned to the bankruptcy court and filed a "motion for a comfort order" or, in the alternative, "relief under FRBP 7060(b)(6)" of the Stay Relief Order.[4]

---

[4] We note that the parties, both before the bankruptcy court and before this Panel, cite "FRCP 7060" and/or "FRBP 7060" and/or "Rule 7060" in their briefing. However, neither the Federal Rules of Bankruptcy Procedure nor the Federal Rules of Civil Procedure include a rule "7060." The bankruptcy court did not comment on the parties' error. We assume the court and the parties are referring to Civil Rule 60 made applicable through Rule 9024 and will review the orders and arguments accordingly.

Carla stated in her supporting declaration that the comfort order was necessary because Scott was attempting to prevent her from litigating any "claims of breach of fiduciary duties" or other "intentional wrongdoing/malfeasance such as conversion as to any asset that was placed on the bankruptcy schedules" in the Family Law Proceedings. According to Carla, even if Scott's alleged bad conduct could be used to satisfy some of the elements of the Time-Limited Claims, that did not preclude that same bad conduct from being relevant to the family law court's final orders as to spousal and child support and equalization of assets pursuant to California family law.

Carla identified several issues that she intended to litigate in the Family Law Proceedings and sought confirmation that the issues fit within the relief provided by the Stay Relief Order ("Disputed Issues").

The Disputed Issues included: (1) whether Scott concealed community property assets; (2) whether Scott engaged in illegal business schemes; (3) whether Scott transferred away community property assets and did not disclose those transfers; (4) whether Scott engaged in negligent, or grossly negligent investments, without obtaining Carla's informed consent; (5) whether Scott used community property funds without approval after the petition for dissolution was filed; and (6) whether Scott falsely represented his income and/or the community's assets and debts during discovery.

Scott opposed Carla's motion. Although he acknowledged the request for clarification from the family law court, Scott argued that another order was unnecessary. Scott also argued that Carla's motion sought relief that would be an inappropriate exercise of an extraordinary remedy provided by FRBP 7060 and inapplicable to the facts of this case.

When the motion was heard, the case had been reassigned to a different judge. That judge was reluctant to change the prior judge's order but invited Carla to bring "another motion for relief from the automatic stay . . . and amplify exactly what the reasoning is and why and how" the Disputed Issues should be considered within § 523(a)(15).[5]

Carla did not accept this invitation. Instead, she filed an "Amended Renewed Motion" in which Carla asserted that she was not alleging any error in the Stay Relief Order. Rather, she was asking the court to "clarify the scope of the relief granted at the request of the Family Court, as a result of intentional or unintentional obfuscation created by [Scott]," so that the Family Law Proceedings could resume.

The bankruptcy court entered a tentative ruling granting the Amended Renewed Motion. First, the bankruptcy court tentatively determined that, contrary to Scott's assertions, there was no time limit for seeking relief under § 523(a)(15).

---

[5] Following the hearing, the bankruptcy court entered an order denying Carla's motion for a comfort order without prejudice.

Second, the bankruptcy court tentatively determined that the "plain text of . . . [§] 523(a)(15) is expansive and does not limit the types of civil actions covered within its purview . . . ."

Finally, the court tentatively determined that § 523(a)(15) covers the types of claims contemplated by Carla.

After a hearing, the bankruptcy court entered an order granting the Amended Renewed Motion for the reasons stated on the record and in the court's tentative ruling ("Order Granting Amended Relief")

Scott timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in granting Carla's Amended Renewed Motion?

Did the bankruptcy court err in its interpretation of the scope of the Stay Relief Order?

## STANDARDS OF REVIEW

We review a motion for clarification under Civil Rule 60(a) or 60(b)(6), made applicable in bankruptcy proceedings pursuant to Rule 9024, for abuse of discretion. *See Garamendi v. Henin*, 683 F.3d 1069, 1077 (9th Cir. 2012); *Determan v. Sandoval* (*In re Sandoval*), 186 B.R. 490, 494 (9th Cir. BAP 1995). To determine whether the bankruptcy court has abused its

7

discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested," and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review a bankruptcy court's legal conclusions, including its interpretation of provisions of the Bankruptcy Code and state law, de novo. *Roberts v. Erhard* (*In re Roberts*), 331 B.R. 876, 880 (9th Cir. BAP 2005), *aff'd*, 241 F. App'x 420 (9th Cir. 2007). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

We may affirm the bankruptcy court's ruling on any basis supported by the record. *See, e.g.*, *Heilman v. Heilman (In re Heilman)*, 430 B.R. 213, 216 (9th Cir. BAP 2010).

## DISCUSSION

### A.    The substance of the motion controls.

Carla's Amended Renewed Motion sought relief under "FRBP 7060(b)(6)." As noted previously, Rule 7060 does not exist. However, it is the substance, not the caption or label of a motion, which determines how a motion should be construed. *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983). "[N]omenclature is not controlling, a court must construe whether a motion, however styled, is appropriate for the relief requested."

8

*Bordallo v. Reyes*, 763 F.2d 1098, 1101 (9th Cir. 1985) (citation and internal quotation marks omitted).

Carla asserted that she was seeking clarification of the Stay Relief Order. In reality, however, she wanted the court to change that order. The Stay Relief Order provided that she could not assert claims in the family court that are covered by §§ 523(a)(2), (4), or (6). She wanted the court to eliminate that limitation. Civil Rule 60(b)(6), made applicable in bankruptcy proceeding through Rule 9024, governs such a request.

**B.    Civil Rule 60(b)(6) allowed the bankruptcy court to grant Carla's Amended Renewed Motion.**

Civil Rule 60(b)(6) is a catch-all provision that allows a court to vacate a judgment for "any other reason justifying relief from the operation of the judgment." *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998). Civil Rule 60(b) complements the discretionary power that bankruptcy courts have as courts of equity "to reconsider, modify or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 740 (9th Cir. 1990).

In this case, it is undisputed that the family law court requested clarification of the Stay Relief Order. The family law court's request for clarification satisfies Civil Rule 60(b)(6)'s "any other reason justifying relief . . . ." *Lehman*, 154 F.3d at 1017. Additionally, the bankruptcy court determined that the Stay Relief Order improperly prohibited Carla from

9

litigating Time-Limited Claims. Therefore, the bankruptcy court was acting within its discretionary power to reconsider, modify or vacate its previous orders when it granted Carla's Amended Renewed Motion. *See In re Lenox*, 902 F.2d at 740.

**C.    The bankruptcy court did not err in determining the Disputed Issues could be litigated in the Family Law Proceedings.**

**1.    Section 523(a)(15) as amended is intentionally broad.**

Section 523(a)(5) excepts from discharge any debt "for a domestic support obligation," which is defined in § 101(14A). Congress added § 523(a)(15) in 1994 as a new discharge exception. *Adam v. Dobin (In re Adam)*, BAP No. CC-14-1416-PaKiTa, 2015 WL 1530086, at *5 (9th Cir. BAP Apr. 6, 2015), *aff'd*, 677 F. App'x 353 (9th Cir. 2017). Section 523(a)(15) excepts from discharge any debt "to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) [i.e., a domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . . ."

A prior BAP panel extensively analyzed the scope and purpose of § 523(a)(15) in *In re Adam*, 2015 WL 1530086, at *4-6. There, the panel agreed with other courts that "[t]he existence of this new provision suggest[ed] Congress envisioned that there would be other types of payments authorized in divorce agreements that would not qualify as alimony, maintenance, or support." *Id.* at *5 (quotation marks and citation omitted).

10

The *Adam* panel concluded that the history of changes to § 523(a)(15), including removing § 523(a)(15) from the time limits imposed by § 523(c)(1), "demonstrate[d] Congress's intent to spread as large a net, and to include as many marriage dissolution-related claims as possible, within this exception to discharge." *Id.* at *4.

Consequently, the combination of amended §§ 523(a)(5) and (a)(15) now exclude from discharge virtually all obligations between spouses and children, as long as the obligations were incurred in the course of a divorce or separation or established in connection with a separation agreement, divorce decree, or other order of a court of record.

**2. Section 523(a)(15) and Time-Limited Claims may overlap and are not mutually exclusive.**

On appeal, Scott argues that the bankruptcy court erred in its interpretation of § 523(a)(15). Scott argues that Carla should be precluded from litigating any claims in the Family Law Proceedings that would qualify as a Time-Limited Claim in the bankruptcy court. It appears that the bankruptcy court initially shared Scott's misconception because the Stay Relief Order granted Carla relief from stay to litigate §§ 523(a)(5) and (a)(15) claims but no relief to litigate any Time-Limited Claims, thus implying that the claims were mutually exclusive. For the following reasons, we determine that § 523(a)(15) and Time-Limited Claims may overlap and are not mutually exclusive.

11

The subsections of § 523(a) are generally not mutually exclusive; thus, the same set of operative facts may be used to establish a variety of nondischargeability claims under § 523(a). *See, e.g., Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 64 (9th Cir. BAP 1998) (holding that §§ 523(a)(2)(A) and (a)(4) are not mutually exclusive); *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 606 (9th Cir. BAP 1998) (holding that the bankruptcy court erred in finding §§ 523(a)(2) and (a)(6) are mutually exclusive); *Romesh Japra, M.D., F.A.C.C., Inc. v. Apte (In re Apte)*, 180 B.R. 223, 232 (9th Cir. BAP 1995) (holding that the bankruptcy court "erred to the extent that it held that § 523(a)(2)(A) and § 523(a)(6) [were] mutually exclusive"), *aff'd*, 96 F.3d 1319 (9th Cir. 1996); *Hanson v. Brown (In re Brown)*, 541 B.R. 906, 910–13 (Bankr. M.D. Fla. 2015) (holding the same debt excepted from discharge under both §§ 523(a)(6) and (a)(15)); *but see Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992) (explaining that a plain reading of §§ 523(a)(2)(A) and (a)(2)(B) indicated Congress's intent for mutual exclusivity because "the former refer[ed] to representations other than those respecting the debtor's financial condition and the latter refer[ed] specifically to written statements of financial condition").

Despite the general rule that subsections of § 523(a) are not mutually exclusive, Scott urges us to interpret § 523(a)(15) to exclude Time-Limited Claims. Statutory language is ambiguous only "if it gives rise to more than

12

one reasonable interpretation." *Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013) (quotation marks omitted).

In this case the statute is not ambiguous and therefore our analysis begins and ends "with the language of the statute itself." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Contrary to Scott's assertions, there is no language in § 523(a) preventing claims of the type included in the Time-Limited Claims from also being claims creating § 523(a)(15) debts. Rather, the language in § 523(a)(15) is expansive. Although § 523(a)(15) prohibits a § 523(a)(5) debt from being included, there is no other limiting language as to the types of claims that may create a § 523(a)(15) debt.

The plain language of the statute makes clear that the only restriction is that the debt must arise "in **the course of** a divorce or separation" or be incurred "in **connection with** a separation agreement, divorce decree or other order of a court . . . ." § 523(a)(15) (emphases added). As such, a nondischargeability claim under § 523(a)(15) is viable regardless of whether the same set of operative facts may also establish Time-Limited Claims.

Furthermore, based on the plain language, we see no statutory directive in § 523(a)(15) to limit the types of claims that a state court can adjudicate between two parties as part of a dissolution proceeding. Indeed, there is no language in § 523(a)(15) limiting the types of claims that may be adjudicated in "the course of a divorce or separation." Therefore, § 523(a)(15) does not prevent a state family law court from considering

13

evidence of a spouse's alleged wrongful conduct when adjudicating the rights, duties, and entitlements in marital property during a dissolution proceeding, regardless of whether similar claims would be time-barred in a bankruptcy case.

### 3. Carla's ability to litigate § 523(a)(15) claims in the Family Law Proceedings was not dependent upon whether she pled Time-Limited Claims before the bankruptcy court.

Scott also argues that because Carla did not timely file any of the Time-Limited Claims in the bankruptcy case, she should be prohibited from making any similar claims in the Family Law Proceedings. We disagree.

First, contrary to Scott's assertions, § 523(a)(15) does not contain that type of temporal restriction. As noted above, the only restriction in § 523(a)(15) is that the debt be "incurred by the debtor in **the course of** a divorce or separation" or incurred "in **connection with** a separation agreement, divorce decree or other order of a court . . . ." § 523(a)(15) (emphases added). Scott's argument ignores the fact that Congress specifically removed § 523(a)(15) from the strict filing deadlines imposed by § 523(c). *In re Adam*, 2015 WL 1530086, at *6. Indeed, as the bankruptcy court correctly determined, following Scott's proposition "would impose the very requirement Congress eliminated." Therefore, the expiration of the time to bring Time-Limited Claims before the bankruptcy court did not impede Carla's right to litigate § 523(a)(15) claims.

14

Second, there is no language in the subsection to indicate a congressional intent to prohibit or preclude a creditor spouse from seeking evidence of a debtor spouse's fraud or deceit as part of the dissolution proceedings unless the creditor spouse timely files a Time-Limited Claim in the bankruptcy court. If we were to accept Scott's interpretation, we would have to determine that a creditor spouse unintentionally waives the right to fully litigate family law claims pursuant to state law by failing to file Time-Limited Claims in the bankruptcy court. Such a result would be absurd and is not logically or legally supported.[6]

Therefore, we conclude that a nondischargeability claim under § 523(a)(15) may be litigated regardless of whether Time-Limited Claims were brought before the bankruptcy court.

### 4. The Family Law Proceedings was the proper forum for litigating the Disputed Issues.

Finally, Scott also seems to argue that the bankruptcy court, rather than the California family law court, was the only venue to litigate the

---

[6] A creditor spouse may maintain a claim against a debtor spouse regardless of whether the claim has been liquidated. This is because the term "debt" is defined in § 101(12) as "liability on a claim." The term "claim" is defined in § 101(5)(A) to mean the "right to payment, **whether or not such right is reduced to judgment, liquidated**, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured . . . ." (Emphasis added). Therefore, regardless of whether Carla's claim was fixed or liquidated by a final property settlement order in the Family Law Proceedings, it is without reasonable debate that she had a claim at the time Scott filed his bankruptcy petition and that she did not waive that claim by not filing a Time-Limited Claim in the bankruptcy court.

Disputed Issues, and because Carla failed to timely raise the Disputed Issues before the bankruptcy court, she had lost her right to raise those issues in any forum. We disagree.

The bankruptcy court has "wide latitude in crafting relief from the automatic stay[.]" *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572 (9th Cir. 1992); *see, e.g.*, *Alonso v. Summerville (In re Summerville)*, 361 B.R. 133, 144 (9th Cir. BAP 2007) (stating "[t]he bankruptcy court had jurisdiction to clarify" its relief from stay order). Because the Disputed Issues concerned Scott's liability regarding alleged misuse of community property pursuant to state law, the bankruptcy court did not abuse its discretion in granting Carla relief from stay to continue the Family Law Proceedings including litigating the Disputed Issues.

Dissolution and the allocation of property incident to a dissolution are longstanding local functions governed by state law. *Ankenbrandt v. Richards*, 504 U.S. 689, 706 (1992). Long ago, the Supreme Court determined that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890); *see also Mansell v. Mansell*, 490 U.S. 581, 587 (1989) ("[D]omestic relations are preeminently matters of state law . . . ."); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").

Accordingly, federal courts, including bankruptcy courts, ordinarily defer to the state courts in matrimonial matters to promote judicial

economy and out of respect for the state courts' expertise in domestic relations issues. *Robbins v. Robbins* (*In re Robbins*), 964 F.2d 342, 344–45 (4th Cir. 1992); *Mac Donald v. Mac Donald (In re Mac Donald)*, 755 F.2d 715, 717 (9th Cir. 1985).

Therefore, because of California's strong state interest in domestic relations matters and the superior competence of California family law courts in "settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states," *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) (quoting *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983)), the bankruptcy court did not err in determining that the Family Law Proceedings was the better forum for adjudicating and equitably distributing the marital property. *See also In re Marriage of Feldman*, 153 Cal. App. 4th 1470 (2007).

Furthermore, the Disputed Issues fit squarely within claims that may impact the division of assets as part of a dissolution proceeding pursuant to the California Family Code.[7] Because the Disputed Issues were relevant

---

[7] For example, the fiduciary obligations of spouses to each other are set forth in Cal. Fam. Code § 721 and are made specifically applicable during dissolution proceedings by Cal. Fam. Code § 1100(e). Relatedly, Cal. Fam. Code § 2100(c) requires a continuing duty of "full and accurate disclosure of all assets and liabilities in which one or both parties have or may have an interest . . . ." Sanctions may be imposed for failure to comply. *See* Cal. Fam. Code § 2107. Additionally, Cal. Fam. Code § 2602 provides that, "[a]s an additional award or offset against existing property, the court may award, from a party's share, the amount the court determines to have been deliberately misappropriated by the party to the exclusion of the interest of the other party in the community estate."

to the Family Law Proceedings, the bankruptcy court did not err in determining that the Disputed Issues fit within the Stay Relief Order, which allowed Carla relief from stay to litigate issues within § 523(a)(15). Accordingly, the bankruptcy court did not err in determining that the Disputed Issues were within the scope of § 523(a)(15) claims, and therefore within the relief granted in the Stay Relief Order and could be litigated as part of the Family Law Proceedings.

## CONCLUSION

Based on the foregoing, we AFFIRM.