**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JAMES MICHAEL WELLS,

*Defendant - Appellant.*

No. 23-3969

D.C. No.
3:13-cr-00008-SLG-1

OPINION

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

Argued and Submitted October 23, 2024
San Francisco, California

Filed September 26, 2025

Before: Richard R. Clifton, Jennifer Sung, and Gabriel P.
Sanchez, Circuit Judges.

Opinion by Judge Sung;
Concurrence by Judge Clifton

# SUMMARY[*]

## Criminal Law

The panel vacated the district court's restitution orders, and remanded, in a case concerning the extent to which the funds in a federal retirement savings account, known as a Thrift Savings Plan (TSP) account, are available to compensate crime victims under the Mandatory Victims Restitution Act of 1996 (MVRA).

In a prior appeal, this court affirmed James Michael Wells' convictions for murdering two co-workers at a U.S. Coast Guard maintenance facility, but vacated the district court's restitution order. On remand, the district court issued amended restitution orders, which authorized the government to collect, as a lump sum, all of the funds held in his TSP account.

In this appeal, Wells challenged the orders issued on remand. The parties agreed that a valid restitution order was entered and that 5 U.S.C § 8437(e)(3) makes at least some of Wells' TSP funds subject to government collection. The government argued that a TSP regulation, 5 C.F.R. § 1653.33, allows it to collect the entirety of a defendant's TSP account balance in one lump-sum payment—i.e., completely cash out the account—whenever a court issues a valid restitution order under the MVRA. Wells argued that the TSP statutory scheme protects his wife's legal interest in

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

his account and therefore limits the government to garnishing only periodic payments from the account.

The panel held that the government can completely cash out a defendant's TSP account to satisfy a restitution order under the MVRA only when the plan's terms would allow the defendant to do so at the time of the order. Because the TSP's spousal consent provision did not permit Wells to completely cash out his account unilaterally at the time he was ordered to pay restitution, neither could the government.

The panel therefore vacated the restitution orders and remanded for further restitution proceedings, including a determination of whether Wells' TSP funds constitute "earnings" under 15 U.S.C. § 1673 such that any garnishment would be limited to 25% under the MVRA.

Concurring in full, Judge Clifton wrote separately to express dissatisfaction with the result required under current law. He questioned why Wells should be able to assert a spousal claim to reduce and defer restitution payments to the victims' families when he would not be able to do that on his own account, and why a spousal claim to a portion of a TSP account should cause the entire account to be withheld from restitution to the victims' families.

## COUNSEL

Glenn J. Shidner (argued), Stephen Corso, and Steven Skrocki, Assistant United States Attorneys; Marie Scheperle, Civil Chief; S. Lane Tucker, United States Attorney; Office of the United States Attorney, United States Department of Justice, Anchorage, Alaska; for Plaintiff-Appellee.

Daniel F. Poulson (argued) and Gary Colbath, Assistant Federal Public Defenders; Office of the Federal Public Defender, Anchorage, Alaska; for Defendant-Appellant.

## OPINION

SUNG, Circuit Judge:

This case concerns the extent to which the funds in a federal retirement savings account, known as a Thrift Savings Plan ("TSP") account,[1] are available to compensate crime victims under the Mandatory Victims Restitution Act of 1996 ("MVRA"). TSPs are part of a larger statute, the Federal Employees' Retirement Systems Act ("FERSA"), which established a comprehensive retirement program for federal employees. Defendant James Michael Wells appeals the district court's restitution orders, which authorized the government to collect, as a lump sum, all of the funds held in his TSP account. The parties agree that a valid restitution

---

[1] While the statutory scheme governing this federal employee retirement savings plan refers to such accounts as "Thrift Savings Fund accounts," e.g., 5 U.S.C § 8435, they are more commonly known as TSP accounts. *See, e.g., In re Jones,* 206 B.R. 614, 615 n.1 (Bankr. D.D.C. 1997).

order was entered and that a TSP statutory provision, 5 U.S.C § 8437(e)(3), makes at least some of Wells' TSP funds subject to government collection. The government argues that a TSP regulation, 5 C.F.R. § 1653.33, allows it to collect the entirety of a defendant's TSP account balance in one lump-sum payment—i.e., completely cash out the account—whenever a court issues a valid restitution order under the MVRA, 18 U.S.C. § 3663A. Wells argues that the TSP statutory scheme protects his wife's legal interest in his account and therefore limits the government to garnishing only periodic payments from the account. We conclude that the government can completely cash out a defendant's TSP account to satisfy a restitution order under the MVRA only when the plan's terms would allow the defendant to do so at the time of the order. Because the TSP's spousal consent provision did not permit Wells to completely cash out his account unilaterally at the time he was ordered to pay restitution, neither could the government. Accordingly, we vacate the district court's restitution orders and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The procedural history of this case is long and complex. This is Wells' third appeal, and the second opinion to address restitution. We summarize the relevant procedural history below.

The TSP is a retirement savings plan for federal employees similar to the 401(k) plans established for private-sector employees under 26 U.S.C. 401(k). Wells was eligible to participate in the TSP because he worked for the U.S. Coast Guard from 1990 to 2012. When the government cashed out Wells' TSP account in 2023, it contained approximately $449,918.98. Wells' wife has a right to a joint

and survivor annuity from his TSP account. *See* 5 U.S.C. § 8434.

In 2019, a jury convicted Wells for the 2012 murders of two of his co-workers at a U.S. Coast Guard maintenance facility in Alaska.[2] *See United States v. Wells*, 55 F.4th 784, 788-91 (9th Cir. 2022) ("*Wells II*"). The district court sentenced Wells to life in prison and ordered him to pay $1,921,640 in restitution towards the victims' estates. In its 2021 restitution order, the district court identified Wells' retirement and disability income, including his TSP funds, as assets available for the government to collect for restitution.

The government argued it could collect from Wells' entire TSP account, notwithstanding his wife's interest in the account, because she has no independent property right in the account. The district court disagreed, concluding that it "can order restitution from the defendant's TSP account, but without spousal consent can only prohibit lump sum withdrawals from the account and order monthly payments be directed to restitution." The district court reached this conclusion based on our decision in *United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) (en banc), in which we held that a government can collect restitution from a defendant's retirement plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") but cannot unilaterally "cash out a retirement plan when ERISA requires that lump sum payments be made payable only with spousal consent." *Id.* at 1063.

---

[2] We overturned Wells' original 2014 conviction on appeal and remanded for a new trial because the government had engaged in prosecutorial misconduct during his first trial. *United States v. Wells*, 879 F.3d 900, 908 (9th Cir. 2018) ("*Wells I*").

The government also argued it could garnish a higher percentage of Wells' retirement and disability income than the statutory limit. The MVRA incorporates the Consumer Credit Protection Act ("CCPA"), which limits "garnishment" to 25% of an individual's "aggregate disposable earnings." *See* 18 U.S.C. § 3613(a)(3) (incorporating 15 U.S.C. § 1673(a)(1)). The district court agreed, concluding that the All Writs Act, 28 U.S.C. § 1651, allowed it to authorize garnishment of 80% of the monthly payments from Wells' retirement and disability benefits, including monthly payments from his TSP account.

On appeal, the Ninth Circuit affirmed the convictions but vacated the 2021 restitution order. *Wells II*, 55 F.4th at 800. We held that, "[b]ecause the MVRA creates specific statutory requirements for garnishing earnings, the All Writs Act cannot be used to sidestep those requirements." *Id.* We remanded the case to the district court "to determine whether each of Wells's benefit payment streams constituted 'earnings' under 15 U.S.C. § 1673" subject to the 25% garnishment cap. *Id.*

On remand, the government conceded that Wells' monthly payments from the retirement and disability sources other than his TSP account constituted earnings under 15 U.S.C. § 1673. As for Wells' TSP account, the government contended that the TSP "has its own mechanism for honoring criminal restitution ordered under the MVRA," as set forth in 5 C.F.R. § 1653.33, but did not explain further. The government asked the district court simply to amend the judgment to require restitution be due "immediately" so that the government could serve the judgment on the TSP administrator to "make a determination and provide information about right of survivorship, if any, and account status/funding." After conducting a restitution hearing in

June 2023, the district court issued a Second Amended Judgment that added the following special instruction regarding restitution: "In addition, the United States government may enforce collection of the lump sum payment at any time." The judgment does not explain the meaning of "lump sum payment."

In September 2023, Wells learned that the government had completely cashed out his TSP account, prompting him to file a motion for an order to show cause regarding the government's restitution collection actions. In response, the government argued that 5 C.F.R. Part 1653 authorized its actions because Part 1653 provided "a separate collection method for criminal restitution that is not subject to a spousal consent requirement." The district court agreed with the government. The district court held that, because the government had seized the TSP funds through an "administrative collection" under Part 1653 rather than through garnishment, *Novak* and the district court's previous TSP ruling prohibiting a lump-sum withdrawal without spousal consent did not apply. The district court then amended its restitution order to specify the equal allocation of TSP funds to the two victims' estates.

Wells timely appealed these restitution orders to this court. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.  STANDARD OF REVIEW

We "review de novo decisions involving the interpretation of federal statutes like the MVRA, and 'questions of law regarding the application of restitution statutes.'" *United States v. Swenson*, 971 F.3d 977, 980-81 (9th Cir. 2020) (citation omitted) (quoting *United States v. Berger*, 574 F.3d 1202, 1204 (9th Cir. 2009)).

## III. LEGAL BACKGROUND

Congress created the TSP when it passed FERSA in 1986. Pub. L. No. 99-335, 100 Stat. 514. Since its creation, TSP has protected the interests of spouses of federal employees. TSP grants spouses the right to a joint and survivor annuity, 5 U.S.C. § 8434, and generally prevents a married federal employee from withdrawing TSP account funds unless the employee and spouse "jointly waive, by written election, any right which the spouse may have to a survivor annuity with respect to such employee," 5 U.S.C. § 8435(a)(1)(B).

In 1996, Congress enacted the MVRA. Pub. L. No. 104-132, 110 Stat. 1227. The MVRA requires defendants to make restitution to victims of violent crimes. 18 U.S.C. § 3663A(c)(1)(A)(i). The MVRA authorizes the government to take "all property or rights to property" of a defendant, "[n]otwithstanding any other Federal law," with express exceptions for four federally authorized pensions not relevant here. 18 U.S.C. § 3613(a)(1) (citing 26 U.S.C. § 6334(a)(6)). The MVRA does not expressly exempt ERISA or TSP retirement plans.

In *Novak*, the government sought an immediate cashout of the defendant's ERISA retirement funds as restitution under the MVRA. 476 F.3d at 1044, 1060. The defendant objected and argued that Section 206 of ERISA, which bars assignment or alienation of ERISA retirement benefits, prevented such collection. *Id.* at 1044. We first considered whether the MVRA enforcement provision described above, 18 U.S.C. § 3613(a), overrode ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1). *Novak*, 476 F.3d at 1044-46. After reading the "notwithstanding" clause of MVRA § 3613(a) in context, and applying various tools of statutory

interpretation, we concluded that Congress had "overrid[den]" ERISA's anti-alienation provision "in sufficiently clear terms to overcome any contrary presumption." *Id.* at 1046-53.

Our holding that MVRA § 3613(a) "allows for the garnishment of retirement benefits covered by ERISA d[id] not, however, resolve th[e] case." *Id.* at 1060. Because the government sought to immediately cash out the defendant's ERISA plan, we "proceed[ed] to clarify the extent to which garnishment pursuant to MVRA [§ 3613(a)] can require retirement plans immediately to turn over the entire present value of a participant's interest." *Id.* We explained that, because MVRA § 3613(a) authorizes the government to enforce a restitution order against only "all property or rights to property of the [defendant]," "[o]nly if the defendant's interest [in a retirement plan] is properly so categorized can that interest be reached by the government." *Id.* Applying that statutory limit, "we [held] the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment . . . if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time." *Id.* at 1063. And even more to the point here, "[w]e note[d] that because the government's right is to step into the *defendant's* shoes, it will not be able unilaterally to cash out a retirement plan when ERISA requires that lump sum payments be made payable only with spousal consent." *Id.* at 1063.

It is undisputed that under 5 U.S.C § 8437(e)(3) and the MVRA, as interpreted by *Novak*, the government can collect restitution from Wells' TSP account. The primary question here is whether the government can cash out Wells' entire TSP account even though FERSA prohibits Wells from doing so without his wife's consent. Although we already

held in *Novak* that the MVRA does not allow the government to cash out an ERISA plan account under the same circumstances, the government argues that TSP accounts differ. Specifically, the government argues that 5 U.S.C § 8437(e)(3) and 5 C.F.R. § 1653.33, which are statutory and regulatory provisions in FERSA without equivalents in ERISA, authorize such cashouts. We examine each provision in turn.[3]

## IV. STATUTORY ANALYSIS

We first consider the statutory provision, 5 U.S.C § 8437(e)(3). "As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). "If the statutory language lacks a plain meaning, we may 'employ other tools, such as legislative history, to construe the meaning of ambiguous terms.'" *United States v. Lillard*, 935 F.3d 827, 834 (9th Cir. 2019) (quoting *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015)).

---

[3] To the extent the government argues that Wells lacks standing to challenge the lump-sum distribution because he asserts the interest of his wife, a third party, this argument fails. Wells asserts a legal interest distinct from that of his wife. Both Wells and his wife face a significant tax liability from this lump-sum disbursement, and any money seized in excess impacts his ability to support his family. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 865 (9th Cir. 2014) (rejecting defendant's third-party standing argument where student plaintiffs asserted "their own 'legal rights and interests,' not a claim of their coach" (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975))).

Section 8437(e)(3) states in full:

> Moneys due or payable from the Thrift
> Savings Fund to any individual and, in the
> case of an individual who is an employee or
> Member (or former employee or Member),
> the balance in the account of the employee or
> Member (or former employee or Member)
> shall be subject to legal process for the
> enforcement of the individual's legal
> obligations to provide child support or make
> alimony payments as provided in section 459
> of the Social Security Act (42 U.S.C. 659),
> *the enforcement of an order for restitution
> under section 3663A of title 18,* forfeiture
> under section 8432(g)(5) of this title, an
> obligation of the Executive Director to make
> a transfer under section 415(d)(3) of the
> Congressional Accountability Act of 1995 (2
> U.S.C. 1415(d)(3)), or an obligation of the
> Executive Director to make a payment to
> another person under section 8467 of this
> title, and shall be subject to a Federal tax levy
> under section 6331 of the Internal Revenue
> Code of 1986. For the purposes of this
> paragraph, an amount contributed for the
> benefit of an individual under section
> 8432(c)(1)  (including  any  earnings
> attributable thereto) shall not be considered
> part of the balance in such individual's
> account unless such amount is nonforfeitable,

as determined under applicable provisions of
section 8432(g).

(emphasis added). Congress added the italicized language referencing § 3663A of the MVRA in 2009. Thrift Savings Plan Enhancement Act of 2009, Pub. L. No. 111-31, § 108, 123 Stat. 1853, 1856.

The government argues that § 8437(e)(3) authorizes it to cash out TSP accounts to enforce MVRA restitution orders. Wells argues § 8437(e)(3) does not override the long-standing spousal protections in § 8435 that require spousal consent before the withdrawal of TSP funds. The statutory text strongly favors Wells' interpretation of § 8437(e)(3).

On its face, § 8437(e)(3) does not expressly override § 8435's spousal protections or even specifically address spousal protections. Nor does it broadly override the interests of all other individuals, such as through the inclusion of a "notwithstanding any other person's interest" clause. *Cf. Novak*, 476 F.3d at 1052 (recognizing that Congress may use a "notwithstanding any other law" clause to "demonstrate that it 'intended to partially repeal'" a prior law (quoting *Lujan-Armendariz v. INS*, 222 F.3d 728, 747 (9th Cir. 2000))).

Consequently, the question is whether § 8437(e)(3) impliedly overrides § 8435's spousal protections.[4] The only

---

[4] Under the government's interpretation of FERSA § 8437(e)(3), that section limits the effect of the preexisting spousal protections in § 8435. It is unclear whether we should apply the presumption against implied repeals when determining whether § 8437(e)(3) has that effect on § 8435. "Because statutory repeals by implication are disfavored, courts presume that by passing a new statute Congress ordinarily does not

text that arguably supports the government's reading that § 8437(e)(3) authorizes a lump-sum withdrawal to satisfy a restitution judgment is the phrase "balance in the account." "Balance in the account" is commonly understood to mean all the funds in an account. The Cambridge Dictionary defines "account balance" in the banking context as "the amount of money someone has in a bank account." *Account Balance*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/account-balance. Other provisions in the Federal Employees' Retirement System statutory scheme use the term "balance" to refer to the entire TSP account. *See, e.g.*, 5 U.S.C. § 8433(a)-(b) (explaining that an employee who separates from government employment "is entitled to the amount of the balance in the employee's or Member's account"); 5 U.S.C. § 8439(a)(2) (defining "balance in an individual's account" as "the sum of" "all contributions" over "the amounts paid out").

But we must read "balance in the account" in context. FERSA § 8437(e)(3) provides that the TSP "balance in the account of the employee . . . shall be subject to legal process for . . . the enforcement of an order for restitution under [the MVRA]." Because § 8437(e)(3) only makes a TSP account

---

intend to displace laws already in effect." *Novak*, 476 F.3d at 1052. In *Novak*, we assumed without deciding that the presumption against implied repeals applies when a new statute does not completely repeal an earlier statute but instead merely limits its application. *Id.* at n.10. If the presumption against implied repeals applies in such circumstances, the presumption would favor Wells, because we would presume that the amendment to § 8437(e)(3) did not impliedly repeal the preexisting spousal protections in § 8435. Because we do not need to rely on that presumption to reach our conclusion, for the purposes of this opinion, we assume without deciding that the presumption does not apply.

balance subject to enforcement of a restitution order *under the MVRA*, the question is whether, under the MVRA, the government may enforce a restitution order by cashing out the entire account balance without spousal consent. We already answered that question in *Novak*. We held that, under the MVRA, the government may *not* unilaterally cash out a retirement plan's account balance without spousal consent when the plan's terms prohibit the defendant from doing so. *See supra* Section III (discussing *Novak*). Further, that limitation on the enforcement of MVRA restitution orders is grounded in the statutory text of the MVRA itself. When a retirement plan's account balance is subject to spousal protections, the balance is *not* the defendant's "property," and therefore, it cannot be reached by the government under MVRA § 3613(a). *See id.* Because the MVRA does not authorize the government to unilaterally cash out a retirement plan balance when the plan's terms require spousal consent, neither does § 8437(e)(3) under FERSA.

Reading § 8437(e)(3) in the broader statutory context of FERSA supports this conclusion. Section 8435 does not allow a TSP account to be cashed out without spousal consent, except in only three circumstances: (1) when "the spouse's whereabouts cannot be determined," § 8435(a)(2)(A); (2) when, "due to exceptional circumstances, requiring the spouse's waiver would otherwise be inappropriate," § 8435(a)(2)(B); and (3) when an account has a nonforfeitable balance of $3,500 or less, § 8435(g). By expressly providing for these three exceptions, "Congress if anything indicated it did not intend" to allow cashouts without spousal consent under any other circumstances. *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 114 (2014) (applying the statutory

construction principle of *expressio unius est exclusio alterius*).

Because the plain meaning of § 8437(e)(3) is clear from its text and context, we need not rely on other tools of statutory interpretation. Nevertheless, consideration of other such tools would lead us to the same conclusion.

The legislative purposes of the MVRA and FERSA support Wells' interpretation. In *Novak*, we found evidence that Congress intended to protect "'blameless' dependents" in both ERISA and the MVRA. 476 F.3d at 1063-64 (quoting *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376 (1990), and citing 18 U.S.C. § 3664(f)(2)(C) (requiring MVRA restitution orders to account for financial obligations to dependents)). Consistent with that intent, the MVRA authorizes collection only from the defendant's assets, not their dependents' assets. 18 U.S.C. § 3613(a). The "MVRA rests on the recognition that '[i]t is essential that the criminal justice system . . . ensure that [the] *offender* be held accountable to repay these costs.'" *Novak*, 476 F.3d at 1043 (quoting S. Rep. No. 104-179, at 18 (1995)) (first and third alterations in original) (emphasis added); *see also Swenson*, 971 F.3d at 983 ("We have recognized from the breadth of the statute's text Congress's intent to broaden the government's collection powers to reach all of a *defendant's* assets.").

FERSA, like ERISA, also reflects Congress' concern for the wellbeing of spouses. While Congress enacted FERSA to provide retirement benefits to federal employees, Congress also sought to protect their spouses. Under 5 U.S.C. § 8434(a)(2)(B), spouses are given the statutory right to a survivor annuity, and § 8435(a)(1)(A)-(B) establish other "[p]rotections for spouses and former spouses." And,

like ERISA in 29 U.S.C. § 1055(g), FERSA's spousal protections under § 8435 restricts a retirement account holder's ability to withdraw lump-sum payments without spousal consent.

Even if § 8437(e)(3) were ambiguous, the legislative history of the 2009 amendment to § 8437(e)(3) does not support reaching a contrary conclusion. *See, e.g.*, 155 Cong. Rec. 14727 (2009) (reflecting no discussion of amendments to § 8437(e)(3)). Because the legislative history of the amendment is unclear, any consideration of it would not tip the scales in the government's favor. *See Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("Those of us who make use of legislative history believe that *clear evidence* of congressional intent may illuminate ambiguous text." (emphasis added)).

## V.  REGULATORY ANALYSIS

Having concluded that 5 U.S.C. § 8437(e)(3) does not authorize the government's lump-sum collection of Wells' TSP funds, we turn now to the government's argument that 5 C.F.R. § 1653.33 allows such collection by setting forth what the government calls an "administrative collection" process. The government contends the regulation makes this "simpler route of collection" available separate from any garnishment process. According to the government, "[u]nlike other government retirement programs, the TSP is uniquely structured to allow the collection of a participant's TSP once a restitution order pursuant to the MVRA has been entered against the participant."

To begin, a regulation cannot erase the MVRA's statutory limits. *See Monsalvo v. Bondi*, 145 S. Ct. 1232, 1243 (2025) ("The question before us isn't whether a regulation can trump a statute (of course not)."). As

discussed previously, *Novak* held that the MVRA, by its own terms, limits its reach to the defendant's own property, subject to any spousal protections. 476 F.3d at 1063-64. The MVRA is also subject to a 25% limitation on garnishments. *See* 18 U.S.C. § 3613(a)(3) (incorporating 15 U.S.C. § 1673(a)(1), which limits garnishments to 25% of an individual's "aggregate disposable earnings"). Because the regulation's enabling statute, 5 U.S.C. § 8437(e)(3), does not authorize the government's lump-sum collection, neither can 5 C.F.R. § 1653.33.

In any event, 5 C.F.R. § 1653.33 merely describes the enforcement process for a restitution order involving a TSP account. In 2014, the Federal Retirement Thrift Investment Board, the federal agency that administers the TSP, promulgated regulations—including 5 C.F.R. § 1653.33— "to explain the Agency's procedures for responding to legal process for the enforcement of participant's levy or criminal restitution order." Legal Process for the Enforcement of a Tax Levy or Criminal Restitution Order Against a Participant Account, 79 Fed. Reg. 53603 (Sept. 10, 2014); *see also id.* at 53604 (in responding to comment that "expressed opposition to allowing the IRS to levy Federal Thrift Savings Plan accounts," explaining that "the Thrift Savings Plan is required by law to honor IRS levies and criminal restitution orders, and the regulations only explain the payout process").

Part 1653 simply describes how valid criminal restitution orders may be executed against a TSP account, including by listing administrative requirements before a restitution order may be enforced. For example, 5 C.F.R. § 1653.33 explains that, to be enforceable, a restitution order must "require the participant to pay a stated dollar amount as restitution" and "be accompanied by an enforcement letter that states the

restitution is ordered under 18 U.S.C. 3663A." 5 C.F.R. § 1653.33(b)(2)-(3). Non-enforceable orders include those requiring the TSP "to make a payment in the future" or "to make a series of payments." 5 C.F.R. § 1653.33(c)(3), (5). As its title "Qualifying criminal restitution order" indicates, 5 C.F.R. § 1653.33 sets out requirements for an enforceable criminal restitution order. Based on the government's own description, § 1653.33 "lists the parameters for a restitution order to allow distribution," § 1653.34 "discusses the processing of qualifying restitution orders," § 1653.35 "details how payments are calculated," and § 1653.36 "instructs how payment will occur." In short, nothing in 5 C.F.R. Part 1653 supports the government's theory that this "administrative collection" regulation authorizes it to override FERSA's statutory spousal protections and completely cash out a TSP account.

\* \* \*

Under the MVRA, the government cannot enforce a restitution order by cashing out a defendant's retirement plan account if the retirement plan's terms prohibit the defendant from doing so without spousal consent. Here, FERSA § 8435 provides the relevant terms of Wells' retirement plan. Section 8435 prohibits Wells from cashing out the balance of his TSP account without his spouse's consent. Section 8437(e)(3) does not expand the government's authority under the MVRA, nor does it override FERSA's spousal protections.

Accordingly, we vacate the district court's restitution orders and remand for restitution proceedings consistent with this opinion, including a determination of whether Wells' TSP funds constitute "earnings" under 15 U.S.C.

§ 1673 such that any garnishment would be limited to 25% under the MVRA.[5]

**VACATED AND REMANDED.**

---

CLIFTON, Circuit Judge, concurring:

On the morning of April 12, 2012, James Wells arrived at work. Within three minutes, he shot and killed two of his colleagues. He was subsequently convicted of murder and sentenced to two separate terms of life imprisonment. We now consider the issue of restitution for the victims' families, more than thirteen years after the murders.

I fully concur and join in the majority opinion. I write separately to express my dissatisfaction with the result of this case required under current law. Why should Defendant Wells be able to assert a spousal claim to reduce and defer restitution payments to the victims' families when he would not be able to do that on his own account? Unless the record is clear that Mrs. Wells has asserted her own claim to the relevant retirement plan account (or expects to do so when the time comes when she legally can), Defendant Wells should not be able to do that by himself. On remand, the district court may consider making sure that Mrs. Wells herself asserts the rights asserted to date by Defendant Wells.

---

[5] Because we vacate the district court's orders, we need not address Wells' alternative arguments, including whether the district court exceeded the scope of this court's remand following *Wells II* and Wells' request for sanctions based on the government's conduct following remand.

Defendant Wells might also be required to provide the financial affidavit previously ordered by the district court.

Further, why should a spousal claim to a portion of a TSP account cause the entire account to be withheld from restitution to the victims' families? I understand and support, as a policy matter, protection of a spousal interest, but I do not expect she will receive *all* the funds from the TSP. And yet, it is her future interest in *some* of the funds that prevents *any* from being available now for restitution to the victims' families.

The law is clear, and we must follow it. The government cannot seize a lump sum from a TSP account if the account holder is married, and if that spouse has not consented to the withdrawal nor waived her right to her annuity. But it is illogical that restitution for the victims' families, including their grieving spouses, be limited and delayed in these circumstances. I regret this result. Congress might consider this subject.